*3 Original Stickered - file in 08-0066*

**3166** Federal Register/Vol. 77, No. 14/Monday, January 23, 2012/Proposed Rules

for a replacement or in lieu of paper certificate, except in the case of a lost certificate, must be accompanied by the original paper certificate. The new certificate will carry the following statement: "Issued in lieu of ___", with the numbers of the certificates that have been superseded.

(c) FSIS will deliver a copy of the certificate to the person who requested such certificate or his agent. Such persons may duplicate the certificate as required in connection with the exportation of the product.

(d) FSIS will retain a copy of the certificate.

(e) Exporters may request inspection personnel to issue certificates for export consignments of product of official establishments not under their supervision, provided the consignments are first identified as having been "U.S. inspected and passed," are found to be neither adulterated nor misbranded, and are marked as required by § 381.105.

**PART 590—INSPECTION OF EGGS AND EGG PRODUCTS (EGG PRODUCTS INSPECTION ACT)**

14. The authority citation for Part 590 continues to read as follows:

Authority: 21 U.S.C. 1031–1056.

15. Add § 590.407 to read as follows:

**§ 590.407 Export certification and marking of containers with export inspection mark.**

(a) Exporters must apply for export certification of inspected and passed products shipped to any foreign country. Exporters may apply for an export certificate using a paper or electronic application. FSIS will assess exporters that submit an electronic application the charge in § 592.500(d).

(b) FSIS will issue only one certificate for each consignment, except in the case of error in the certificate or loss of the certificate originally issued. A request for a replacement or in lieu of paper certificate, except in the case of a lost certificate, must be accompanied by the original paper certificate. The new certificate will carry the following statement: "Issued in lieu of ___", with the numbers of the certificates that have been superseded.

(c) FSIS will deliver a copy of the export certificate to the person who requested such certificate or his agent. Such persons may duplicate the certificate as required in connection with the exportation of the product.

(d) FSIS will retain a copy of the certificate.

(e) When authorized by inspection personnel, establishments must mark the outside container of any inspected and passed egg products destined for export, except ship stores, small quantities exclusively for the p use of the consignee and not fo distribution, and shipments by the U.S. Armed Forces, with a contains a unique identifier the corresponds to the export certi an export inspection mark with following form:[1]



(f) Exporters may request in personnel to issue certificates consignments of product of of[...] establishments not under their supervision, provided the consignments are first identified as having been "U.S. inspected and passed," are found to be neither adulterated nor misbranded, and are marked as required by paragraph (e) of this section.

**PART 592—VOLUNTARY INSPECTION OF EGG PRODUCTS**

16. The authority citation for Part 592 continues to read as follows:

Authority: 7 U.S.C. 1621–1627.

17. In § 592.20 add paragraph (d) to read as follows:

* * * * *

(d) Export certification. Upon application, by any person intending to export any egg product, inspectors may make certifications regarding products for human food purposes, to be exported, as meeting conditions or standards that are not imposed or are in addition to those imposed by the regulations in the part and the laws under which such regulations were issued.

17. Revise § 592.500 paragraph (a) and add paragraphs (d), (e), and (f) as follows:

**§ 592.500 Payment of fees and charges.**

(a) Fees and charges for voluntary base time rate, overtime inspection service, holiday inspection service, and electronic export applications shall be paid by the interested party making the application for such service, in accordance with the applicable provisions of this section and § 592.510 through § 592.530, both inclusive. If so

[1] The number "529893" is given as an example only. The number on the export certificate will correspond to the export certificate.

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**FEB - 6 2012**

**GREGORY C. LANGHAM**
**CLERK**

Alfred V. Almanza,
*Administrator.*
[FR Doc. 2012–1158 Filed 1–20–12; 8:45 am]
**BILLING CODE 3410-DM-P**

**FEDERAL DEPOSIT INSURANCE CORPORATION**

**12 CFR Part 325,** [...] **C**

**RIN 3064–AD91**

**Annual Stress Te[...]**

**AGENCY:** Federal Dep[os]it Insurance Corporation.

**ACTION:** Proposed rule with request for public comment.

**SUMMARY:** The Federal Deposit Insurance Corporation (the "Corporation" or "FDIC") requests comment on this proposed rule that implements the requirements in Section 165(i) of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") regarding stress tests ("prop[osed rule]"). This proposed rule would implement section 165(i)(2) by requiring state nonmember banks and state savings associations supervised by the Corporation with total consolidated assets of more than $10 billion to conduct annual stress tests in accordance with the proposed rule, report the results of such stress tests to the Corporation and the Board of Governors of the Federal Reserve System ("Board") at such time and in such a form containing information required by the Corporation, and publish a summary of the results of the required stress test.

**DATES:** Comments should be received on or before March 23, 2012.

*Adversely effects Bill of exchange #201099293 7/16/01 Judgment 9/11/01*
*Proof of Service #201101604 7/19/01*



WAYNE W. WILLIAMS   El Paso County, CO
01/25/2012  09:44:23 AM
Doc $0.00    Page

for a replacement or in lieu of paper certificate, except in the case of a lost certificate, must be accompanied by the original paper certificate. The new certificate will carry the following statement: "Issued in lieu of ____", with the numbers of the certificates that have been superseded.

(c) FSIS will deliver a copy of the certificate to the person who requested such certificate or his agent. Such persons may duplicate the certificate as required in connection with the exportation of the product.

(d) FSIS will retain a copy of the certificate.

(e) Exporters may request inspection personnel to issue certificates for export consignments of product of official establishments not under their supervision, provided the consignments are first identified as having been "U.S. inspected and passed," are found to be neither adulterated nor misbranded, and are marked as required by § 381.105.

### PART 590—INSPECTION OF EGGS AND EGG PRODUCTS (EGG PRODUCTS INSPECTION ACT)

14. The authority citation for Part 590 continues to read as follows:

**Authority:** 21 U.S.C. 1031–1056.

15. Add § 590.407 to read as follows:

### § 590.407 Export certification and marking of containers with export inspection mark.

(a) Exporters must apply for export certification of inspected and passed products shipped to any foreign country. Exporters may apply for an export certificate using a paper or electronic application. FSIS will assess exporters that submit an electronic application the charge in § 592.500(d).

(b) FSIS will issue only one certificate for each consignment, except in the case of error in the certificate or loss of the certificate originally issued. A request for a replacement or in lieu of paper certificate, except in the case of a lost certificate, must be accompanied by the original paper certificate. The new certificate will carry the following statement: "Issued in lieu of ____", with the numbers of the certificates that have been superseded.

(c) FSIS will deliver a copy of the export certificate to the person who requested such certificate or his agent. Such persons may duplicate the certificate as required in connection with the exportation of the product.

(d) FSIS will retain a copy of the certificate.

(e) When authorized by inspection personnel, establishments must mark the outside container of any inspected and passed egg products destined for export, except ship stores, small quantities exclusively for the personal use of the consignee and not for sale or distribution, and shipments by and for the U.S. Armed Forces, with a mark that contains a unique identifier that corresponds to the export certificate or an export inspection mark with the following form:[1]



(f) Exporters may request inspection personnel to issue certificates for export consignments of product of official establishments not under their supervision, provided the consignments are first identified as having been "U.S. inspected and passed," are found to be neither adulterated nor misbranded, and are marked as required by paragraph (e) of this section.

### PART 592—VOLUNTARY INSPECTION OF EGG PRODUCTS

16. The authority citation for Part 592 continues to read as follows:

**Authority:** 7 U.S.C. 1621–1627.

17. In § 592.20 add paragraph (d) to read as follows:

* * * * *

(d) Export certification. Upon application, by any person intending to export any egg product, inspectors may make certifications regarding products for human food purposes, to be exported, as meeting conditions or standards that are not imposed or are in addition to those imposed by the regulations in the part and the laws under which such regulations were issued.

17. Revise § 592.500 paragraph (a) and add paragraphs (d), (e), and (f) as follows:

### § 592.500 Payment of fees and charges.

(a) Fees and charges for voluntary base time rate, overtime inspection service, holiday inspection service, and electronic export applications shall be paid by the interested party making the application for such service, in accordance with the applicable provisions of this section and § 592.510 through § 592.530, both inclusive. If so

---

[1] The number "529893" is given as an example only. The number on the export certificate will correspond to the export certificate.

required by the inspection personnel, such fees and charges shall be paid in advance.

* * * * *

(d) Exporters that submit electronic export certificate applications will be charged a fee per application submitted.

(e) For each calendar year, FSIS will calculate the electronic export certificate application fee, using the following formula: Labor Costs (Direct Inspection Labor Cost + Technical Support Cost + Export Library Maintenance Cost) + Information Technology Costs (On-going operations Cost + Maintenance Cost + eAuthentication Cost), divided by the number of export applications.

(f) FSIS will publish notice of the electronic export certificate application fee annually in the **Federal Register**.

Done at Washington, DC, on January 11, 2012.

**Alfred V. Almanza,**
*Administrator.*

[FR Doc. 2012–1158 Filed 1–20–12; 8:45 am]

**BILLING CODE 3410-DM-P**

---

### FEDERAL DEPOSIT INSURANCE CORPORATION

**12 CFR Part 325,** Subpart C

**RIN 3064–AD91**

### Annual Stress Test

**AGENCY:** Federal Deposit Insurance Corporation.

**ACTION:** Proposed rule with request for public comment.

**SUMMARY:** The Federal Deposit Insurance Corporation (the "Corporation" or "FDIC") requests comment on this proposed rule that implements the requirements in Section 165(i) of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") regarding stress tests ("proposed rule"). This proposed rule would implement section 165(i)(2) by requiring state nonmember banks and state savings associations supervised by the Corporation with total consolidated assets of more than $10 billion to conduct annual stress tests in accordance with the proposed rule, report the results of such stress tests to the Corporation and the Board of Governors of the Federal Reserve System ("Board") at such time and in such a form contained in information required by the Corporation, and publish a summary of the results of the required stress test.

**DATES:** Comments should be received on or before March 23, 2012.

Adversely effects Bill of Exchange #201099293 7/16/01 Judgment 9/11/01
Proof of Service # 201101604 7/19/01

WAYNE W. WILLIAMS   El Paso County, CO
01/25/2012  09:44:23 AM
Doc  $0.00      Page
Rec  $21.00    1 of 3     212008113

**ADDRESSES:** You may submit comments by any of the following methods:

- *Federal eRulemaking Portal: http://www.regulations.gov.* Follow the instructions for submitting comments.
- *Agency Web site: http://www.FDIC.gov/regulations/laws/federal/propose.html.*
- *Mail:* Robert E. Feldman, Executive Secretary, Attention: Comments/Legal ESS, Federal Deposit Insurance Corporation, 550 17th Street, NW., Washington, DC 20429.
- *Hand Delivered/Courier:* The guard station at the rear of the 550 17th Street Building (located on F Street), on business days between 7 a.m. and 5 p.m.
- *Email: Comments@FDIC.gov.*

*Instructions:* Comments submitted must include "FDIC" and "RIN 3064–AD91." Comments received will be posted without change to *http://www.FDIC.gov/regulations/laws/federal/propose.html,* including any personal information provided.

**FOR FURTHER INFORMATION CONTACT:** George French, Deputy Director, Policy, (202) 898–3929, Robert Burns, Associate Director, Mid-Tier Bank Branch, (202) 898–3905, or Karl R. Reitz, Senior Capital Markets Specialist, (202) 898–6775, Division of Risk Management and Supervision; Mark G. Flanigan, Counsel, (202) 898–7426, or Ryan K. Clougherty, Senior Attorney, (202) 898–3843, Legal Division, Federal Deposit Insurance Corporation, 550 17th Street, NW., Washington, DC, 20429.

**SUPPLEMENTARY INFORMATION:**

## I. Background

### A. Overview of Section 165(i) of the Dodd-Frank Act

Section 165(i)(2) of the Dodd-Frank Act requires the Corporation to issue regulations that require FDIC-insured state nonmember banks and FDIC-insured state-chartered savings associations with total consolidated assets of more than $10 billion ("covered banks") to conduct annual stress tests ("bank-run stress tests").

For these stress tests, section 165(i)(2) requires that the Corporation issue regulations that: (1) Define the term "stress test" for purposes of the regulations; (2) establish methodologies for the conduct of the stress tests that provide for at least three different sets of conditions, including baseline, adverse, and severely adverse conditions; (3) establish the form and content of a required report on the stress tests that banks subject to the regulation must submit to the Corporation; and (4) require covered banks to publish a summary of the results of the required stress tests.

Section 165(i)(2)(C) of the Dodd-Frank Act requires the Corporation, in coordination with the Board and the Federal Insurance Office, to issue consistent and comparable regulations to implement the requirements of this section. This proposed rule implements section 165(i)(2) as described further below.

### B. Overview of Proposed Rule

#### 1. Annual Stress Tests

##### a. *Purpose*

The Corporation views the bank-run stress tests required under the proposed rule as providing a forward-looking information to assist the Corporation in its overall assessment of a covered bank's capital adequacy, helping to better identify potential downside risks and the potential impact of adverse outcomes on the covered bank's capital adequacy, and to assist it in ensuring the institution's financial stability. Further, these stress tests are expected to improve the quality of covered banks' internal assessments of capital adequacy and overall capital planning.

The proposed rule would require covered banks to conduct annual stress tests. The proposed rule defines a stress test as a process to assess the potential impact on a covered bank of economic and financial conditions ("scenarios") on the consolidated earnings, losses and capital of the covered bank over a set planning horizon, taking into account the current condition of the covered bank and its risks, exposures, strategies, and activities.

The Corporation expects that the stress tests required under the proposed rule would be one component of the broader stress testing activities conducted by covered banks. The broader stress testing activities should address the impact of a broad range of potentially adverse outcomes across a broad set of risk types affecting other aspects of a bank's financial condition beyond capital adequacy alone. For example, under existing guidance, supervisors expect banks to evaluate their liquidity under stressed conditions and their exposure to changes in interest rates.[1] In addition, a full assessment of a bank's capital adequacy must take into account a range of factors, including evaluation of its capital planning processes, the governance over those processes, regulatory capital measures, results of supervisory stress tests where applicable, and market assessments, among other factors. The Corporation notes that the stress tests described in the proposed rule focus on capital adequacy and do not focus on other aspects of financial condition.

##### b. *Applicability*

The proposed rule would apply to covered banks. Covered banks are defined under the proposed rule as any state nonmember bank or state-chartered savings association that has more than $10 billion in total consolidated assets, as determined based on the average total consolidated assets as reported on the state nonmember bank's four most recent Consolidated Reports of Condition and Income ("Call Reports") or on the state savings association's four most recent Thrift Financial Reports ("TFRs"), respectively. Once a state nonmember bank or state savings association becomes a covered bank, it will remain so for purposes of the proposed rule unless and until the state nonmember bank or state savings association has $10 billion or less in total consolidated assets as determined on each of, for state nonmember banks, the four most recent Call Reports or, for state savings associations, each of the four most recent TFRs.

The Corporation may accelerate or extend any specified deadline for stress testing if the Corporation determines such modification is appropriate in light of the institution's activities, operations, risk profile, or regulatory capital.

##### c. *Process Overview*

Except as otherwise provided in the proposed rule, a bank that becomes a covered bank no less than 90 days before September 30 of any given calendar year must comply with the requirements, including the timing of required submissions to the Corporation, of the proposed rule from September 30 forward. With respect to initial applicability, a bank that is a covered bank on the effective date of the proposed rule is subject to the proposed requirements as of the effective date, including the timing of required submissions to the Corporation. The Corporation expects to use the following general process and timetables in connection with the stress tests.

##### i. *Reporting by Covered Banks*

Under the proposed rule, the Corporation would collect the covered bank's stress test results and additional qualitative and quantitative information about the tests on a confidential basis. The Corporation plans to publish notice of both specific requirements and related instructions for the report to be

---

[1] On June 15, 2011, the Corporation, along with the other banking agencies, published for comment proposed guidance on covered banks' stress testing as a part of overall institution risk management. The guidance included stress testing non-capital related aspects of financial condition. (76 FR 35072)

testing practices and methodologies, validation, and use of stress testing results, as well as processes for updating the covered bank's stress testing practices consistent with relevant supervisory guidance.

(2) The board of directors and senior management of each covered bank shall approve and annually review the controls, oversight, and documentation, including policies and procedures of the covered bank pursuant to this subpart.

### § 325.205 Report to the FDIC of stress test results and related information.

(a) *Report required for stress tests.* On or before January 5 of each year, each covered bank must report the results of the stress test required under section 325.203 to the FDIC in accordance with paragraph 325.205(b).

(b) *Content of report for annual stress tests.* Each covered bank must file a report in the manner, in such form, and containing the information established by the Corporation.

(c) *Confidential treatment of information submitted.* The confidentiality of information submitted to the Corporation under this subpart and related materials shall be determined in accordance with applicable law including any available exemptions under the Freedom of Information Act (5 U.S.C. 552(b)) and the FDIC's Rules and Regulations regarding the Disclosure of Information (12 CFR Part 309).

(d) *Extension.* The Corporation may, in its discretion, and upon request by a covered bank, extend the time period for compliance established under paragraph 325.205(a) for up to an additional 60 days.

### § 325.206 Supervisory review of stress tests and post-assessment actions.

(a) Each covered bank shall take the results of the stress tests conducted under section 325.203 into account in making changes, as appropriate, to: The covered bank's capital structure (including the level and composition of capital); its exposures, concentrations, and risk positions; any plans for recovery and resolution; and to improve overall risk management.

### § 325.207 Publication of summary of results.

(a) *Public disclosure of results required for stress tests of covered banks.* Within 90 days of the date required for submitting a report under § 325.205(a) for its required stress test under § 325.203, a covered bank shall publicly disclose a summary of the results of the stress tests required under § 325.203.

(b) *Information to be disclosed in the summary.* The information disclosed by each covered bank shall, at a minimum, include—

(1) A description of the types of risks being included in the stress test;

(2) A general description of the methodologies employed to estimate losses, pre-provision net revenue, loss reserves, and changes in capital positions over the planning horizon;

(3) Aggregate losses, pre-provision net revenue, loss reserves, net income, and *pro forma* capital levels and capital ratios (including regulatory and any other capital ratios specified by the Corporation) over the planning horizon under each scenario.

Dated at Washington, DC this 17th day of January, 2012.

By order of the Board of Directors.

Federal Deposit Insurance Corporation.

**Robert E. Feldman,**
*Executive Secretary.*

[FR Doc. 2012–1135 Filed 1–20–12; 8:45 am]

**BILLING CODE 6714–01–P**

---

## FARM CREDIT ADMINISTRATION

**12 CFR Parts 611, 612, 619, 620 and 630**

**RIN 3052–AC4**

### Compensation, Retirement Programs, and Related Benefits

**AGENCY:** Farm Credit Administration.

**ACTION:** Proposed rule.

**SUMMARY:** The Farm Credit Administration (FCA, us, we, or our) proposes to amend our regulations related to Farm Credit System (System) bank and association disclosures to shareholders and investors. The proposed rule would require reporting of supplemental retirement plans, a discussion of the link between senior officer compensation and performance, and timely and transparent reporting to shareholders of significant events that occur between annual reporting periods. We believe the proposed changes will provide full, transparent and consistent disclosures to shareholders. The proposed rule would identify the minimum responsibilities a compensation committee must perform to ensure it continues to exercise good stewardship, and require that System banks and associations provide for a nonbinding, advisory vote on senior officer compensation in order to engage shareholders in the management and control of their institution. Also, the proposed rule would bifurcate existing annual reporting requirements at § 620.5 and make other conforming technical changes.

**DATES:** Submit comments on or before March 23, 2012.

**ADDRESSES:** We offer a variety of methods for you to submit your comments. For accuracy and efficiency reasons, commenters are encouraged to submit comments by email or through the FCA's Web site. As facsimiles (faxes) are difficult for us to process and achieve compliance with section 508 of the Rehabilitation Act, we no longer accept comments submitted by fax. Regardless of the method you use, please do not submit your comments multiple times via different methods. You may submit comments by any of the following methods:

- *Email:* Send an email to *reg-comm@fca.gov*.
- *FCA Web site: http://www.fca.gov.* Select "Public Commenters," then "Public Comments," and follow the directions for "Submitting a Comment."
- *Federal eRulemaking Portal: http://regulations.gov.* Follow the instructions for submitting comments.
- *Mail:* Gary K. Van Meter, Director, Office of Regulatory Policy, Farm Credit Administration, 1501 Farm Credit Drive, McLean, VA 22102–5090.

You may review copies of all comments we receive at our office in McLean, Virginia or on our Web site at *http://www.fca.gov.* Once you are in the Web site, select "Public Commenters," then "Public Comments," and follow the directions for "Reading Submitted Public Comments." We will show your comments as submitted, including any supporting data provided, but for technical reasons we may omit items such as logos and special characters. Identifying information that you provide, such as phone numbers and addresses, will be publicly available. However, we will attempt to remove email addresses to help reduce Internet spam.

**FOR FURTHER INFORMATION CONTACT:**

Deborah Wilson, Senior Accountant, Office of Regulatory Policy, Farm Credit Administration, McLean, VA 22102–5090, (703) 883–4414, TTY (703) 883–4434, or

Laura McFarland, Senior Counsel, Office of General Counsel, Farm Credit Administration, McLean, VA 22102–5090, (703) 883–4020, TTY (703) 883–4020.

**SUPPLEMENTARY INFORMATION:**

### I. Objective

The objectives of this proposed rule are to:

• Improve the transparency and completeness of disclosures in System

---

*Seven pages abbreviated to three* [handwritten annotation]

[handwritten across page: "Fake Court"]

# Bill of Exchange
*Fides servanda est; simplicitas juris Gentium praevaleat*

J. Patrick Kelly   El Paso Cty, CO   **201099293**
07/16/2001   10:55
Doc   $0.00   Page
Rec   $5.00   1 of 1

cured waiver of tort and tenable on the foreign exchange market for the exact amount of all outstanding debts of the International Bank for Reconstruction and Development, the International Monetary Fund and Principal United Nations on and after the thirteenth day of the eighth month in the year of our Lord and Savior Jesus Christ of Nazareth two-thousand and one provided the above named World Bank has not abandoned and announced abandonment of all claims and seizures.

This bona fide tort may be used for certificate of exigent circumstances and open qui tam adoption - Rule C(3)(a)(ii)(B) "...clerk must promptly issue a summons and a warrant for the arrest.", E(5) general bond is claim X2 and is based in Information - (El Paso County Clerk and Recorder custodian J. Patrick Kelly, Colorado Springs, Colorado) Return of bill of indictment #99075907 5/12/99; Notice of Default #99057108 4/13/99; Notice of lis pendens #99094773 6/14/99; Summons charging stellionation #200013756 2/9/2000, testimony #200011014 2/01/00 and default #200097765 8/17/2000; Zionism cancellation algorithm #099184702 12/8/99; Case Tav published #200047314 5/1/00, #200056121 5/18/00, #200056835 5/22/00, #200058902 5/24/00, #200060667 5/30/00, #200061229 5/30/00, #200062119 6/1/00, #200071134 6/20/00, #200072077 6/21/00, #200072963 6/23/00, #200081870 7/14/00, *Afroyim v. Rusk* 387 U.S. 253 (1967) (original 13th Amendment "subsequently not ratified") and #95110459 10/13/95 (United States Courthouse custodian James H. Manspeaker, Denver, Colorado) Admiralty cases 95-D-3136, 99-D-319 and 01-D-0240; #200129251 10/24/00; #201068520; 4th Judicial District of Colorado, Lee V. Cole, Jr. custodian El Paso County Court Case #00-T-6808 - Judge Sylvia Manzanares and authoritative historical information such as but not limited to: The Public Papers of Franklin D. Roosevelt - EO 2038, 2040 and HJR 192; Bretton Woods Agreements P.L. 94-564 (Jamaica/Rambouillet accord); Public Law 102-14 Seven Noachide Laws valid common law and prohibiting use of humans for chattel by Genesis 1:27; *Charter of Freedoms and Exemptions to Patroons* - June 7, 1629 and Press Releases of 5/29/97 "Clinton urges reviving spirit of Marshall Plan (photo of Clinton posturing Illuminati style at the Hague with Dutch Queen Beatrix, House of Orange)" *Associated Press* and 'Swiss made millions dealing with Hitler, records show' *New York Times*. COURTS OF THE UNITED STATES ... 136. When a seizure has been voluntarily abandoned, it loses its validity, and no jurisdiction attaches to any court, unless there be a new seizure. 10 Wheat. 325; 1 Mason, 361. *Bouvier's Law Dictionary* 1856.

[Notary seal: Brandi D. Walters, Notary Public, State of Colorado — my commission expires 3-7-2004]
[Signature]

[El Paso County Colorado seal]
Office of County Clerk and Recorder
El Paso County, State of Colorado
Certified to be a full, true and Correct
Copy of record in my Office.
Date _____ Book ___ Page ___
Wayne W. Williams
County Clerk & Recorder
El Paso County, Colorado
By _____ Deputy
Michelle Thomson

[Signatures]

```
J. Patrick Kelly  El Paso Cty,CO    201101604
07/19/2001        01:39
Doc      $0.00    Page
Rec      $5.00    1  of  1
```

**AFFIDAVIT OF MAILING**

I, Tad C. Howard, have mailed the recorded Bill of Exchange on July 17, 2001 to:

The New York Stock Exchange
Attn: Chairman
11 Wall Street
New York city, New York

The United Nations
Attn: Attorney General - Kofi Annan
1 United Nations Plaza
New York city, New York

Paul O'Niell - Secretary of the Treasury
Department of the Treasury
1500 Pennsylvania Avenue NW
city of Washington, District of Columbia

The United States Court
Attn: James Manspeaker - custodian of repository
1929 Stout Street
Denver, Colorado

The Fourth Judicial District Court of Colorado
Attn: Lee V. Cole, Jr. - custodian in repository
20 East Vermijo Avenue
Colorado Springs, Colorado

The El Paso County Clerk and Recorder
J. Patrick Kelly - custodian in repository
200 S Cascade Avenue
Colorado Springs, Colorado

El Paso County Clerk and Recorder Reception Number 201099293

(STATE OF COLORADO)
(                    ) ss
(COUNTY OF EL PASO )

Tad C. Howard

Subscribed and sworn to before me this 17 day of July 2001

Karen L Jett



My Commission Expires 06-09-2005



Office of County Clerk and Recorder
El Paso County, State of Colorado
Certified to be a full, true and Correct
Copy of record in my Office.
201101604 Book ____ Page ____
Date 1-26-12
Wayne W. Williams
County Clerk & Recorder
El Paso County, Colorado
By Michelle Thomsen, Deputy

# CERTIFICATE OF MAILING

I, Theresa L. Willis, the undersigned, hereby certify that the documents listed below were received by Courier Process Service, Inc., on January 26, 2012. I further certify that I deposited true and correct copies of the following:

Envelope addressed to USDC Colorado 08-0066, 901 19th Street A105, Denver, Colorado, 80294, containing:

- A pre-addressed postage paid return envelope addressed to David Merrill c/o Courier Process, 115 E. Vermijo, #202, Colorado Springs, Colorado [80903]
- A pre-addressed postage paid envelope addressed to Robert E. Feldman Executive Secretary, Attention: Comments/Legal ESS, Federal Deposit Insurance Corporation, 550 17th Street NW, City of Washington, District of Columbia 20429
- Original 3166, 3167, 3172, Federal Register, Vol. 77, No. 14, Monday, January 23, 2012, Proposed Rules, Reception Number 212008113, with Refusal for Cause (pages 1 through 3, seven pages abbreviated to three); original to be filed with the USDC Clerk, a copy to be sent to Robert E. Feldman Executive Secretary, and a copy to be returned to David Merrill
- Original Bill of Exchange, Reception Number 201099293; original to be filed with the USDC Clerk, a copy to be sent to Robert E. Feldman Executive Secretary, and a copy to be returned to David Merrill
- Original of Affidavit of Mailing, Reception Number 201101604; one copy to be filed with the USDC Clerk, a copy to be sent to Robert E. Feldman Executive Secretary, and a copy to be returned to David Merrill
- copies of this Certificate of Mailing dated January 13, 2012; one copy to be filed and one copy to be returned

in the United States mail, postage prepaid, addressed to the parties shown on the mailing list attached hereto, this 4th day of February, 2012.

*Theresa L Willis*
Person Certifying Mailing

Cases: 08-0066

Courier Process Service, Inc., job reference #2012000658

C/o David Merrill
COURIER PROCESS SERVICE, INC
115 East Ve... ;0, Suite 202
Colorado Springs, CO 80903-2008

USDC Colorado 08-00066
701 19th Street A105
Denver, Colorado
80294

7010 2780 0002 7566 2957

Return Receipt Requested
Showing Address
Where Delivered

CERTIFIED MAIL